IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DOUGLAS HUGHES, JR.**,

        Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

        Defendant.

Case No. 3:13-cv-00480-SI

**OPINION AND ORDER**

James S. Coon, SWANSON, THOMAS, COON & NEWTON, 820 S.W. 2nd Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, District of Oregon, Ronald K. Silver, Assistant United States Attorney, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Leisa A. Wolf, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Mr. Douglas Hughes, Jr. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is reversed and this case is remanded for further proceedings.

PAGE 1 – OPINION AND ORDER

# BACKGROUND

## A. The Application

Mr. Hughes was 52 years old when he originally applied for disability insurance benefits in December of 2005, alleging an onset date of November 10, 2005. AR 22, 108, 125. He alleged disability due to open heart surgery that resulted from an aortic aneurism. AR 125. The Commissioner denied the claim initially and upon reconsiderations; thereafter, Mr. Hughes requested a hearing before an Administrative Law Judge ("ALJ"). AR 16. In August 2009, the ALJ issued a partially favorable decision, finding Mr. Hughes disabled beginning on June 26, 2008 (Mr. Hughes' 55th birthday) under Medical Vocational Rule 202.06. The ALJ found that Mr. Hughes failed to meet his burden of proving disability before June 26, 2008. AR 14-24. Mr. Hughes appealed the ALJ's decision to the district court, where the Commissioner conceded that the ALJ had improperly rejected the testimony of lay witness Lorrayne Ellis. On May 2, 2012, Judge Papak remanded the case for further proceedings so that the ALJ could reconsider the written statement by Ms. Ellis. AR 722-38.

The ALJ held a remand hearing on December 12, 2012. AR 642-68. On January 11, 2013, the ALJ again issued a partially favorable decision finding Mr. Hughes disabled starting June 26, 2008, but also finding that Mr. Hughes had failed to prove disability for the time between November 10, 2005 and June 25, 2008. The Appeal's Counsel denied Mr. Hughes' request for review on February 23, 2011, making the ALJ's decision the final decision of the Commissioner. AR 3-5. Mr. Hughes now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.       Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.       Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ applied the sequential process is his decision issued on January 11, 2013. AR 675-83. At step one, the ALJ found that Mr. Hughes had not engaged in substantial gainful activity since the date of his application. AR 675. At step two, the ALJ found that Mr. Hughes suffered from the following severe impairments: "hypertension and status post ruptured thoracic

PAGE 4 – OPINION AND ORDER

aneurysm." *Id.* At step three, the ALJ found that Mr. Hughes did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. AR 676-77.

The ALJ then determined that Mr. Hughes has the residual functioning capacity ("RFC") to perform light work "except he cannot do any climbing other than the occasional climbing of stairs." AR 677. In reaching this conclusion, the ALJ considered Mr. Hughes' symptom testimony and the testimony of Mr. Hughes' girlfriend Ms. Ellis, but found this testimony only partially persuasive because both described activities of daily living that were partially inconsistent with the symptom testimony.

Additionally, the ALJ considered the reports of Mr. Hughes' primary care provider, a treating physician who has treated Mr. Hughes since 2005 and who currently sees Mr. Hughes once a month, the state agency physical consultants, and the state agency mental consultants. The ALJ gave limited weight to the opinions of Mr. Hughes' primary care provider, Dr. Michael Booker, because his opinions were "quite conclusory, providing very little explanation of the evidence relied on in forming [his] opinion." AR 680. The ALJ gave the state physical consultants some weight because their opinions were somewhat inconsistent with the medical record as a whole. And finally, the ALJ gave the state mental consultants great weight because their opinions were "consistent with the record." AR 681.

At step four, the ALJ heard testimony from a vocation expert ("VE"), who testified that an individual with like characteristics and impairments of the claimant (before reaching advanced age on June 26, 2008) could perform work existing in significant numbers in the national economy, specifically as a product sorter or as a packing line worker. Accordingly, the ALJ concluded Plaintiff failed to establish disability before June 26, 2008. AR 682.

PAGE 5 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## DISCUSSION

### A. Lay Witness Testimony

Mr. Hughes argues that the ALJ improperly discounted Ms. Ellis' testimony, which demonstrates the extent of Mr. Hughes' disability between November 10, 2005 and June 26, 2008. Specifically, Mr. Hughes contends that the ALJ failed to give "germane reasons" for

PAGE 6 – OPINION AND ORDER

dismissing Ms. Ellis' testimony. The Commissioner responds that the ALJ gave sufficiently germane reasons to discount the testimony of Ms. Ellis and that the ALJ's residual functional capacity finding was supported by substantial evidence.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R.§404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Family members and friends in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject lay witness testimony "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ is not, however, required to address each witness on an "individualized witness-by-witness basis" and may reject lay witness testimony that is predicated on reports of the claimant when the claimant is properly found not credible. *Molina*, 674 F.3d at 1114; *see also Williamson v. Comm'r*, 438 F. App'x 609, 611 (9th Cir. 2001). If, conversely, the ALJ finds testimony credible, the ALJ errs by failing to incorporate the limitations found in that testimony into the claimant's RFC and any subsequent hypotheticals to the Vocational Expert ("VE"). *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (reversing an ALJ determination that failed to incorporate functional limitations described by the "generally credible" lay witness).

The record before the ALJ contains two written statements from Ms. Ellis. The first one, submitted in 2006, provided several observations relevant to the severity of Mr. Hughes' impairments and his daily activities. Ms. Ellis stated that "shortness of breath wakes [Mr. Hughes] up" and that his "meds cause disorientation," that "it takes [Mr. Hughes] a while to get the energy to do anything and every task wears him out," and that "he suffers from shortness of breath when he walks, sits, or climbs stairs." AR 151-55. Ms. Ellis further stated that Mr. Hughes

PAGE 7 – OPINION AND ORDER

could only walk three or four blocks before needing to stop and rest, and that he could only walk this much once a day. AR 155.

Ms. Ellis' second written statement was written and submitted in 2009 when the case was on remand. In that statement, she provided details about Mr. Hughes' condition in the months after his aortic aneurism. She stated that the various blood pressure medications that the doctors tried caused significant side effects. Mr. Hughes "was prescribed a medication that made his feet swell so much that he could not wear shoes or walk and it knocked him out within an hour or so of taking it." AR 222. At this time, he could not walk very far away from the house and walking even short distances "was very challenging" for Mr. Hughes. *Id.*

In Ms. Ellis' 2009 statement, she also provided a description of how Mr. Hughes had been "improving steadily" between 2005 and 2009. In 2009, Mr. Hughes had recovered and improved to the extent that he could ride the bus alone, walk up to one mile twice a day, and volunteer two hours per week at a local good co-op. Ms. Ellis, however, noted that even the small effort that it takes to volunteer for two hours a week "exhausts him." AR 223. Ms. Ellis stated that Mr. Hughes applied for a vocational rehabilitation program after his original application for social security disability benefits was denied. In 2006, the vocational rehabilitation staff believed that there was nothing they could do to help Mr. Hughes find work, and in 2009, when he contacted vocational rehabilitation again, they stated that they believed Mr. Hughes' disability had not improved enough for him to be employable. AR 223. She further noted that the side effects of Mr. Hughes' medicine still cause dizziness and zoning out. *Id.*

In the 2013 opinion, the ALJ summarized Ms. Ellis' testimony as follows:

> In October 2006, she felt he could lift only 15 pounds, yet in June 2009, she reported he has a lifting limit up to 40 pounds. In March 2006, she reported he walked every day and lifted weights. Then in June 2009, she reported he takes two walks per day for one mile

PAGE 8 – OPINION AND ORDER

>each as recommended by his doctor. She also reported he had been improving and he could now leave home alone and can ride the bus without her. She also noted he was named working member of the year last year at his volunteer workplace because he was so reliable. She stated he had applied for work and tried to follow through with vocational rehabilitation, but he has not been able to obtain work. Ms. Ellis also reported that claimant is able to cook, watch television, read, grocery shop and do light household chores such as loading and unloading the dishwasher and cleaning the stove. She also noted he has no difficulties with his personal care needs, he can ride a bike, and he plays the drums.

AR 679. The ALJ then evaluated Ms. Ellis' testimony as follows:

>Ms. Ellis is credible to the extent it is probable that she has reliably reported her observations and what she has been told. However, as discussed previously there are several reasons to question the credibility of the claimant's allegations. For the same reasons, Ms. Ellis' statements are of only partial value for arriving at a determination of the claimant's overall residual functional capacity. Specifically, as already discussed, the claimant has been able to remain significantly functional, especially in regard to his activities of daily living. In fact, Ms. Ellis' statements are fairly consistent with the claimant's reported activities of daily living and confirm he is on the whole very active and independent. Overall, her statements do not appear to support a conclusion the claimant has limitations greater than those determined in this decision.

AR 680.

Although not explicitly stated, it appears that the ALJ discounted Ms. Ellis' testimony on two grounds. First, to the extent that her testimony was based on reports made by Mr. Hughes, the ALJ discounted Ms. Ellis' testimony because Mr. Hughes' credibility was discounted for various reasons[1]; and second, to the extent that Ms. Ellis' testimony was based on her observations of Mr. Hughes, the ALJ discounted Ms. Ellis' testimony because her description of

---

[1] The ALJ found Mr. Hughes' report of his symptoms less than fully credible because his reported activities of daily living suggested he was less impaired than he claimed and because he had a history of noncompliance with medical treatment. AR 679.

PAGE 9 – OPINION AND ORDER

Mr. Hughes' daily activities were inconsistent with the alleged severity of Mr. Hughes' impairments and consistent with the ALJ's RFC for Mr. Hughes.

The ALJ's first reason for discounting Ms. Ellis' testimony is a germane and legally valid justification. The ALJ may properly reject lay witness testimony that is predicated on reports of the claimant when the claimant is properly found not credible. *Molina*, 674 F.3d at 1114; *Williamson*, 438 F. App'x at 611. On appeal, Mr. Hughes did not challenge the ALJ's credibility finding regarding Mr. Hughes. Therefore, to the extent that Ms. Ellis' testimony was based on reports by Mr. Hughes, the ALJ properly discounted this testimony.

Because Ms. Ellis lives with Mr. Hughes, and has lived with him for more than twenty years, she is in a position to *observe* his symptoms and daily activities and is competent to testify regarding these observations. *See Dodrill*, 12 F.3d at 918-19. Therefore, the ALJ cannot discount the testimony of Ms. Ellis based purely on Mr. Hughes' credibility. *See id.* The ALJ's second reason for discounting Ms. Ellis' testimony is that her description of Mr. Hughes' daily activities is inconsistent with the alleged severity of Mr. Hughes' impairments.

The ALJ cites the difference in Ms. Hughes' testimony between 2006 and 2009, but fails to take into consideration any improvement that might have occurred between those two dates. In fact, each activity that the ALJ cites as evidence that Mr. Hughes was less disabled than he claims comes from descriptions of his daily activities in 2009, a time *after* the contested period of disability between 2005 and 2008. First, the ALJ points to the fact that Mr. Hughes can work as a volunteer for two hours per week without breaks, a job that Mr. Hughes was not able to start before 2008. Second, the ALJ points to the fact that Mr. Hughes can ride his bike for two and a half miles, something that Mr. Hughes was not able to do in 2006. And finally, the ALJ points to the fact that Mr. Hughes can lift 45 pounds, when in 2006 he was only able to lift 15 pounds.

PAGE 10 – OPINION AND ORDER

Because the period at issue in this appeal is November 10, 2005 through June 25, 2008, it is important that the ALJ consider Mr. Hughes' daily activities from the relevant time period to determine Mr. Hughes' RFC. Several sources in the record have testified that Mr. Hughes' condition has slowly improved since his aortic aneurism in November 2005. AR 223, 577. The ALJ himself references the differences between Ms. Ellis' testimony describing Mr. Hughes in 2006 and 2009, but does not take this into consideration in the RFC or hypotheticals to the VE. To discount Ms. Ellis' testimony because her descriptions of Mr. Hughes' daily activities in 2009 are inconsistent with the alleged severity of his impairment between 2005 and 2008 is not a germane reason supported by evidence in the record. Because the ALJ found Ms. Ellis otherwise credible, he must consider how her report of Mr. Hughes' symptoms and daily activities in the earlier time frame, before Mr. Hughes' gradual improvement, affects the disability determination for the period before June 26, 2008.

## B. Credit as True Doctrine

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1137-38 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for

PAGE 11 – OPINION AND ORDER

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (quotation marks and citation omitted). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

In this case it is unclear whether incorporating Ms. Ellis' testimony regarding her observations of Mr. Hughes' symptoms and daily activities in the period between November 10, 2005 and June 26, 2008 would require a finding of disability. Therefore, the Court remands the case to the ALJ to determine, incorporating Ms. Ellis' testimony regarding Mr. Hughes' symptoms and daily activities during the relevant time frame into the RFC and hypotheticals to the VE, whether Mr. Hughes' condition between November 10, 2005 and June 25, 2008 was disabling.

## CONCLUSION

The Commissioner's decision that Mr. Hughes was not disabled between November 10, 2006 and June 25, 2008 is REVERSED and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 16th day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
